UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHARLES E. GORE,

                              Plaintiff,

         -v-

THE RBA GROUP, INC. and HAIDER
ENGINEERING,

                              Defendants.

Case No. 03-CV-9442 (KMK) (JCF)

ORDER ADOPTING
REPORT & RECOMMENDATION

KENNETH M. KARAS, District Judge:

       *Pro se* Plaintiff Charles Gore ("Plaintiff") filed a Complaint and an Amended Complaint

against Defendant The RBA Group, Inc. ("Defendant" or "RBA") on November 20, 2003, and

February 20, 2004, respectively.  Subsequently, Plaintiff obtained counsel and, on July 1, 2004,

filed a Second Amended Complaint against RBA and Haider Engineering ("Haider"), alleging

unlawful racial harassment pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e, *et seq*., 42 U.S.C. § 1981, New York City Human Rights Law ("NYCHRL"), N.Y.C.

Admin. Code § 8-101 *et seq.*, and New York State Human Rights Law ("NYSHRL"), N.Y. Exec.

Law § 290 *et seq.*, stemming from events occurring in March 2002.[1]

       On January 22, 2004, this case was referred to Magistrate Judge Francis for pretrial case

management and dispositive motions.  The case was reassigned to this Court on October 5, 2004.

On April 27, 2005, Defendant filed this Motion for Summary Judgment, and on August 29, 2005,

Magistrate Judge Francis issued a Report and Recommendation ("R&R"), recommending that

_____

       [1]Plaintiff originally included claims of retaliation and disparate treatment, but later
withdrew those claims.  (Pl.'s Br. in Opp'n to Def. RBA Group's Mot. for Summ. J. 2 n.4 ("Pl.'s
Opp'n").)  To this date, Haider has not answered the Second Amended Complaint and apparently
is in default.

the Motion be denied.  For the reasons stated Magistrate Judge Francis's thoughtful R&R and

herein, Defendant's Motion for Summary Judgment is denied in its entirety.

The relevant facts are thoroughly discussed in Magistrate Judge Francis's R&R, and the

Parties' familiarity with them is assumed.

I. Standard of Review

A. Summary Judgment

"The judgment sought should be rendered if the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact

and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "In

determining whether a genuine issue of material fact exists, a court must examine the evidence in

the light most favorable to, and draw all inferences in favor of, the non-movant . . . ."  *Lucente v.*

*Int'l Bus. Machs. Corp.*, 310 F.3d 243, 253-54 (2d Cir. 2002).  To defeat Defendant's Motion for

Summary Judgment, Plaintiff must make a sufficient showing of proof on each element of his

claim for which he bears the burden of proof.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325

(1986) (holding that the moving party is not required "to produce evidence showing the absence

of a genuine issue of material fact"); *Adorno v. Lord & Taylor*, No. 97-CV-4444, 1999 WL

759995, at *2 (S.D.N.Y. Sept. 27, 1999) (holding that plaintiff must prove "there is a reasonable

amount of proof supporting the essential elements of his case which must be proved at trial").

B. Reviewing a Magistrate Judge's Report and Recommendation

A district court reviewing a report and recommendation "'may accept, reject, or modify,

in whole or in part, the findings or recommendations made by the magistrate judge.'"  *Donahue*

*v. Global Home Loans & Fin., Inc.*, No. 05-CV-836, 2007 WL 831816, at *1 (S.D.N.Y. Mar. 15,

2007) (quoting 28 U.S.C. § 636(b)(1)(C)).  Under 28 U.S.C. § 636(b)(1) and Rule 72(b) of the

Federal Rules of Civil Procedure, parties may submit objections to a magistrate judge's report

and recommendation.  The objections must be "specific" and "written," and must be made

"within 10 days after being served with a copy of the recommended disposition."  Fed. R. Civ. P.

72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Where a party does not submit an objection, "'a

district court need only satisfy itself that there is no clear error on the face of the record.'"

*Donahue*, 2007 WL 831816, at *1 (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y.

1985)).

　　　　If a party submits a timely objection to a report and recommendation, the district judge

will review the parts of the report and recommendation to which the party objected under a *de*

*novo* standard of review.  *See* 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a *de*

*novo* determination of those portions of the report or specified proposed findings or

recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge

must determine de novo any part of the magistrate judge's disposition that has been properly

objected to.  The district judge may accept, reject, or modify the recommended disposition;

receive further evidence; or return the matter to the magistrate judge with instructions.").

　　　　The Parties' objections to the R&R were due September 19, 2005.  Pursuant to Fed. R.

Civ. P. 72, the ten-day period in which to file objections commences from the date the report and

recommendation is served.  Service by mail is "complete upon mailing."  Fed. R. Civ. P.

5(b)(2)(C).  A mailing occurs at the "'instant the documents are placed into the hands of the

United States Post Office or a Post Office Box.'"  *Greene v. WCI Holdings Corp.*, 136 F.3d 313,

315 (2d Cir. 1998) (quoting *United States v. Kennedy*, 133 F.3d 53, 59 (D.C. Cir. 1998)).

3

On September 19, 2005, Defendant sent a letter to this Court seeking clarification regarding the time limit within which the Parties were required to file objections to the R&R. In its letter, Defendant calculated that its objections were due by September 23, 2005. Defendant's calculations were inaccurate. The R&R stated that copies were mailed to the Parties on August 29, 2005. (R&R 19.) However, the envelope containing Defendant's copy of the R&R was postmarked August 30, 2005. Therefore, Defendant had until September 19, 2005 – ten days from August 30, not including weekends or holidays, and adding three days for mail service – to file its written objections.[2]

On September 22, 2005, the Court ordered Defendant to submit a motion to file the objections out-of-time pursuant to Fed. R. Civ. P. 6(b), along with its objections, by September 23, 2005. At the time, the Court was under the impression that Defendant's time to file objections had expired on September 16, 2005. However, given that Defendant's time to file objections did not expire until September 19, 2005, the Court will construe its September 19, 2005 letter seeking clarification as a request for an enlargement of time under Fed. R. Civ. P.

---

[2]In its September 22, 2005 Order, the Court initially stated that Defendant's objections were due on September 16, 2005 because the R&R stated that it had been mailed to the Parties on August 29. The Court was later informed by Defendant that the envelope in which its copy arrived was postmarked August 30. (Cert. of Joseph B. Fiorenzo, Esq., in Supp. of Def.'s Rule 6(b) Mot. to File Written Objections Out-of-Time ¶ 2 & Ex. A.) Pursuant to Rule 5(b), the determining moment for service is when the mail reaches the Post Office or a post office box, not when it is placed in an out-box or when it is postmarked by postal service employees. *See Greene*, 136 F.3d at 315; *Kennedy*, 133 F.3d at 59. Here, it appears that Magistrate Judge Francis placed the R&R in the out-box on August 29 to be mailed. The mail in the Courthouse is picked up twice per day, postmarked by Courthouse personnel, and delivered to the United States Post Office the same day it is picked up. Because the mail is postmarked before it reaches the Post Office, and the envelope in question is postmarked August 30, it appears that the R&R did not reach the Post Office until August 30. Therefore, service was not completed until August 30.

4

6(b)(1). The Court grants Defendant's request. Because Defendant filed its objections on September 23, 2005, as ordered, its objections were timely filed. Therefore, the Court has conducted a *de novo* review of those portions of the R&R to which specific objections were made. *See United States v. Raddatz*, 447 U.S. 667, 673-74 (1980) (citing 28 U.S.C. § 636(b)(1)).

## II.  Defendant's Objections

Defendant has moved for summary judgment on two grounds:  (1) Plaintiff's Title VII claim fails because no employer-employee relationship existed between the Parties during the relevant time period; and (2) even if there was an employer-employee relationship between the Parties during the relevant time period, Plaintiff's hostile work environment claim fails because Plaintiff has not established vicarious liability on behalf of Defendant. Defendant objects to Magistrate Judge Francis's rejection of these two claims. Additionally, Defendant objects to the R&R on the ground that Plaintiff did not suffer a tangible employment action. The Court addresses each of RBA's arguments in turn.[3]

### A.  Employer-Employee Relationship

Defendant has moved for summary judgment on the basis that no employer-employee relationship existed between RBA and Plaintiff at the time of the alleged harassment, as is required by Title VII. Title VII protects employees. *See* 42 U.S.C. § 2000e-2(a). An "employee" is "an individual employed by an employer." 42 U.S.C. § 2000e(f). Therefore, to be held liable under Title VII for unlawful practices, an employer-employee relationship must

---

[3]Haider did not file a summary judgment motion, let alone answer the Complaint.

5

have existed between the Parties at the time of the alleged harassment.[4]  *See Kern v. City of Rochester*, 93 F.3d 38, 44-45 (2d Cir. 1996).

Plaintiff argues that RBA and Haider jointly employed him.  The joint employer doctrine "construe[s] the term 'employer' functionally, 'to encompass persons who are not employers in conventional terms, but who nevertheless control some aspect of an employee's compensation or terms, conditions, or privileges of employment.'"  *Laurin v. Pokoik,* No. 02-CV-1938, 2004 WL 513999, at *8 (S.D.N.Y. Mar. 15, 2004) (quoting *Equal Employment Opportunity Comm'n v. Sage Realty Corp.*, 507 F. Supp. 599, 611 (S.D.N.Y. 1981)).  Employers may have "joint" status even though they are separate legal entities if they have "chosen to handle certain aspects of their employer-employee relationships jointly."  *Id.* (internal quotation marks omitted).  In determining whether employers have "joint" status, the courts consider "commonality of hiring, firing, discipline, pay, insurance, records, and supervision."  *N.L.R.B. v. Solid Waste Servs., Inc*.,

---

[4]The same is not true for Section 1981, which does not require an employer-employee relationship for a plaintiff to recover.  *See Lenoble v. Best Temps, Inc.*, 352 F. Supp. 2d 237, 246 (D. Conn. 2005) (noting that Section 1981 claims are not limited to employers); *Santiago v. City of Vineland*, 107 F. Supp. 2d 512, 541 (D. N.J. 2000) (same).  Here, Plaintiff was supervised daily by Julius Giarraputo ("Giarraputo"), an RBA Group employee.  Therefore, Plaintiff can maintain his harassment claim against Defendant under Section 1981.

Additionally, Plaintiff can maintain his harassment claim against Defendant under New York City and State Human Rights Laws.  As discussed *infra*, although Defendant RBA Group did not pay Plaintiff, its employees supervised him on a day-to-day basis.  Such supervision is sufficient to establish a claim for harassment under New York City and State Human Rights Laws.  *See Dunson v. Tri-Maint. & Contractors, Inc*., 171 F. Supp. 2d 103, 113 (E.D.N.Y. 2001) (holding that NYCHRL is subject to same analysis as NYSHRL); *O'Gorman v. Holland*, No. 97-CV-0842, 2000 WL 134514, at *6-7 (S.D.N.Y. Feb. 3, 2000) (denying summary judgment under NYSHRL where evidence that defendant "person" aided and abetted unlawful acts); *Sanchez v. Brown, Harris, Stevens, Inc*., 651 N.Y.S.2d 477, 478 (App. Div. 1996) (affirming denial of summary judgment under NYSHRL where there was factual question of individual defendant's aiding and abetting of harassment of plaintiff).

38 F.3d 93, 94 (2d Cir. 1994).

Defendant objects to Magistrate Judge Francis's treatment of the joint employer doctrine. According to Defendant, Judge Francis's error was in relying on, with one exception, "mostly older [Second Circuit] cases." (Written Objections of Def. RBA Group to R&R of Hon. James C. Francis, IV, U.S.M.J., in Connection with Def.'s Mot. for Summ. J. 2-3 ("Def.'s Obj.").) A review of the more recent Second Circuit cases, Defendant contends, shows that an entity cannot be liable under Title VI unless it is "the employer of the plaintiff at the time that the alleged discriminatory conduct occurred." (*Id.* 3.) Defendant's position begins with the Second Circuit's decision in *O'Connor v. Davis*, 126 F.3d 112 (2d Cir. 1997). In *O'Connor*, the Second Circuit held that "a prerequisite to considering whether an individual is [an employee] is that the individual have been hired in the first instance." *Id.* at 115. The *O'Connor* court also emphasized that remuneration was an "essential condition" in ascertaining an employer-employee relationship. *Id.* at 116. These points were echoed in the slightly more recent decision of *York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) (rejecting claim that defendant employed an unpaid volunteer). The anchor of Defendant's position, however, is *Scaglione v. Chappaqua Central School District*, 209 F. Supp. 2d 311 (S.D.N.Y. 2002). In *Scaglione*, the court claimed that there was a contradiction between *O'Connor* and *York* and, *Spirt v. Teachers Insurance and Annuity Ass'n*, 691 F.2d 1054, 1063 (2d Cir. 1982), *vacated on other grounds*, 463 U.S. 1223 (1983), an earlier Second Circuit decision which had recognized that joint employers were covered by Title VII. *See Scaglione*, 209 F. Supp. 2d at 315, n.5. The *Scaglione* court determined that it was appropriate to go with the more recent cases, thereby concluding that "a direct employment relationship is a necessary trait of a Title

VII 'employer.'" *Id.*

Defendant's position crumbles from a closer reading of the relevant caselaw. For example, the basis for the joint employer doctrine is not limited to *Spirt*, but in fact is grounded in several Second Circuit decisions, including some post-dating the decisions relied upon by Defendant. For example, in *Solid Waste Services*, the Second Circuit held that a "joint employer relationship may be found to exist where there is sufficient evidence that [one entity] had immediate control over the other company's employees," identifying "commonality of hiring, firing, discipline, pay, insurance, records, and supervision" as "relevant factors." 38 F.3d at 94 (citing *Clinton's Ditch Coop. Co. v. NLRB*, 778 F.2d 132, 138 (2d Cir. 1985)). And, the Second Circuit has repeatedly recognized both the joint employer concept and the same factors cited in *Solid Waste Services* in analyzing a claim of joint employment. *See*, *e.g., Arculeo v. On-Site Sales & Mktg., LLC*, 425 F.3d 193, 198 (2d Cir. 2005) (citing *Clinton's Ditch*); *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 89 (2d Cir. 2005) (citing *Solid Waste Servs.* and *Clinton's Ditch*).[5] Not surprisingly, the lower courts within the Second Circuit have followed suit. *See, e.g., Niland v. Buffalo Laborers Welfare Fund*, No. 04-CV-0187, 2007 WL 3047099, at *9 (W.D.N.Y. Oct. 18, 2007) (recognizing joint employer doctrine in Title VII context); *Shehab v. N.Y. State Dep't of Transp.*, No. 03-CV-5730, 2005 WL 659146, at *3 (S.D.N.Y. Mar. 10, 2005) (same); *Nelson*

---

[5]Defendant attempts to evade the import of *Woodman*, claiming that it only applied the joint employer concept in the ADEA context. While true, the courts are unpersuaded that such a distinction makes a difference. *See Laurin*, 2004 WL 513999, at *4 ("The term [employer] is construed under Title VII and the ADEA in the same way."); *Schade v. Coty, Inc.*, No. 00-CV-1568, 2001 WL 709258, at *6 n.5 (S.D.N.Y. June 25, 2001) (same); *Pemrick v. Stracher*, 67 F. Supp. 2d 149, 169 n.15 (E.D.N.Y. 1999) ("The statutory definition of 'employer' under the ADEA is almost identical to that found in Title VII.").

*v. Beechwood Org.*, No. 03-CV-4441, 2004 WL 2978278, at *4 (S.D.N.Y. Dec. 21, 2004) (same).

This overwhelming weight of authority directly undercuts Defendant's position that there must be a direct relationship between the employer and the employee. *See Laurin*, 2004 WL 513999, at *4 ("The term 'employer' has been construed liberally under Title VII, and does not require a direct employer/employee relationship."). And, while the factors the Second Circuit has identified should be considered, the term employer is to be viewed "functionally, to encompass persons who are not employers in conventional terms, but who nevertheless control some aspect of an employee's compensation or terms, conditions, or privileges of employment." *Nelson*, 2004 WL 2978278, at *4 (internal quotation marks omitted). Or, in words that the Second Circuit could have used to describe this case:

> Where this doctrine is operative, an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's joint employer.

*Arculeo*, 425 F.3d at 198. Simply put, the courts may look, among other things, at the control that the joint employers exercise over the employee in setting the terms and conditions of that employee's work.

Here, Plaintiff presents numerous examples of the manner in which RBA controlled the terms and conditions of his employment during the time period in question. For example, "[Mr.] Giarraputo, the RBA employee in charge of the Route 231 project, admitted that he (a) supervised Mr. Gore on a day-to-day basis, (b) had the authority to discipline Mr. Gore, (c) assigned Mr. Gore work (as did other RBA employees), (d) set Mr. Gore's schedule, (e) decided

if Mr. Gore got overtime or night work, and (f) could decide to transfer Mr. Gore." (Pl.'s Opp'n

15.) Additionally, "[a]n RBA supervisor . . . assigned Mr. Gore to the Route 231 project . . . ,

Mr. Gore supervised an RBA employee . . . on the project . . . , [and] RBA was involved in

keeping records of Mr. Gore's hours worked." (*Id*. 15.) Moreover, after Plaintiff filed his

complaint with the New York State Department of Transportation ("DOT"), it was Ms. Sohn and

Mr. Mavis, RBA employees, who conducted the internal investigation regarding Plaintiff's

complaint and who inquired as to why Plaintiff had not followed the complaint procedures

outlined in RBA's Employee Handbook. (Def.'s Statement of Material Facts Pursuant to Local

Civil Rule 56.1 ¶¶ 30-34 ("Def's 56.1 Stmt."); R&R 5-6.) Additionally, Plaintiff was the only

employee on the Route 231 project who was paid by Haider. (Dep. of Julius Giarraputo 12-13,

22 ("Giarraputo Dep.").) Given this evidence, it is not difficult to imagine a jury finding that

Defendant completely controlled the terms and conditions of Plaintiff's work during the relevant

time period.

The other factors used by courts to evaluate a claim of joint employment also

demonstrate that there is work for a jury to do here. For example, Plaintiff has presented

evidence demonstrating that Defendant had hired Plaintiff. Indeed, Defendant hired Plaintiff

twice; first in November 1999, and again in March 2003, after Plaintiff was laid off by Haider.

Certainly, from the sequence of these events, a reasonable jury could infer that Defendant lent

Plaintiff to Haider merely to work on the Route 231 project and to get around state regulations

that would have barred Defendant from employing Plaintiff and the other RBA employees

working on the Route 231 project. Moreover, there can be no claim by Defendant that it did not

compensate, either directly or indirectly, Plaintiff for the work he performed, as there is ample

evidence that Plaintiff received a salary for his work.  In other words, Plaintiff is nothing like the

unpaid volunteer in *York*.  *See Equal Employment Opportunity Comm'n v. Everdry Mktg. and*

*Mgmt., Inc.*, 01-CV-6329, 2005 WL 231056, at *7 n.7 (W.D.N.Y. Jan. 31, 2005) (distinguishing

*York* on similar grounds).  Given the weight of evidence suggesting that, although Haider

nominally remunerated Plaintiff for some of the relevant time period, RBA controlled most

aspects of Plaintiff's employment, summary judgment for Defendant is not appropriate.  *See*

*Nelson*, 2004 WL 2978278, at *4 (denying summary judgment where plaintiff alleged that

defendant was joint employer because it supervised and coordinated his day-to-day work).

   B.  Hostile Work Environment

   "In order to prevail on a hostile work environment claim, a plaintiff must first show that

the harassment was sufficiently severe or pervasive to alter the conditions of the victim's

employment and create an abusive working environment. . . . Second, the plaintiff must

demonstrate a specific basis for imputing the conduct creating the hostile work environment to

the employer."  *Feingold v. New York*, 366 F.3d 138, 149-50 (2d Cir. 2004) (internal quotation

marks omitted).  Third, Plaintiff must prove that the hostile conduct occurred because of his

membership in a protected class.  To make such a showing, a plaintiff must introduce evidence

of hostile conduct that a reasonable juror could find was a result of the plaintiff's membership in

a protected class.  *See Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999).

   "The first element of a hostile work environment claim has both an objective and

subjective component:  'the misconduct must be severe or pervasive enough to create an

objectively hostile or abusive work environment, and the victim must also subjectively perceive

that environment to be abusive.'"  *Petrosino v. Bell Atl.*, 385 F.3d 210, 221 (2d Cir. 2004)

(quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).  To maintain a hostile work

environment claim, Plaintiff "'must demonstrate either that a single incident was extraordinarily

severe, or that a series of incidents were 'sufficiently continuous and concerted' to have altered

the conditions of [his] working environment.'"  *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir.

2002) (quoting *Cruz v. Coach Stores, Inc*., 202 F.3d 560, 570 (2d Cir. 2000)).

      Defendant did not object to Magistrate Judge Francis's findings on the first and third

elements, namely that Plaintiff provided sufficient proof "that the conditions of [Plaintiff's]

employment were altered because of the racially hostile work environment on the Route 231

project," and that such hostility was based on Plaintiff's membership in a protected class (indeed,

objecting to either would have been pointless on this record).  (R&R 15.)  Therefore, the Court

reviews those recommendations for clear error and finds that Plaintiff has tendered enough

evidence to substantiate the first and third elements of a hostile work environment.  *See Reyes v.

Mantello*, No. 00-CV-8936, 2003 WL 76997, at *1 (S.D.N.Y. Jan. 9, 2003) (holding that, where

no objections are made, "'a district court need only satisfy itself that there is no clear error on the

face of the record'" (quoting *Smith*, 618 F. Supp. at 1189)).  As to the first element, Plaintiff

asserted that he subjectively found his work environment to be abusive as a result of Mr.

Giarraputo's treatment over one and a half years.  (R&R 15.)  Additionally, Plaintiff's work

environment was objectively abusive, as he allegedly was required to endure shockingly

derogatory racial remarks from Mr. Giarraputo on a weekly basis, including being called a

"nigger," a "piece of shit," and a "fat dumb black ass."  (*Id*.)  Indeed, Defendant's internal

investigation into Plaintiff's allegations confirmed that Mr. Giarraputo had made racially

derogatory comments directly to Plaintiff and to other RBA employees, and Mr. Giarraputo later

admitted to referring to Plaintiff as "nigger" to his co-workers. (*Id*. 4, 6.) Additionally, after

Plaintiff complained, Mr. Giarraputo allegedly made retaliatory comments to Plaintiff and

sabotaged his performance by giving him false instructions. (*Id*. 15.) As to the third element,

the slurs were clearly directed at Plaintiff by Mr. Giarraputo because of Plaintiff's race.

Defendant objects to Magistrate Judge Francis's recommendation that the second element

– imputing the abusive work environment to Plaintiff's employer – is satisfied by Plaintiff's

proof of a tangible employment action. Defendant argues, as it did before Magistrate Judge

Francis, that it should be permitted to present the so-called *Faragher/Ellerth* affirmative defense

to rebut any finding of vicarious liability on its behalf. Indeed, when faced with a hostile work

environment claim, an employer may be permitted to raise the *Faragher/Ellerth* affirmative

defense, which is comprised of two elements: (1) "the employer exercised reasonable care to

prevent and correct promptly any [discriminatory] harassing behavior," and (2) "the plaintiff

employee unreasonably failed to take advantage of any preventive or corrective opportunities

provided by the employer or to avoid harm otherwise." *Faragher v. City of Boca Raton*, 524

U.S. 775, 807 (1998); *Burlington Indust., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). However,

the employer may raise the defense "only if one of two further elements is met: either (1) the

employee's supervisor took no 'tangible employment action,' which involves an official

company act, against the employee; or (2) any tangible employment action taken against the

employee was not part of the supervisor's discriminatory harassment." *Ferraro v. Kellwood Co.*,

440 F.3d 96, 101 (2d Cir. 2006).

Therefore, before Defendant can successfully rely on the *Faragher/Ellerth* defense, the

Court must first determine "whether the supervisor's behavior culminate[d] in a tangible

employment action against the employee." *Fairbrother v. Morrison*, 412 F.3d 39, 49 (2d Cir. 2005) (internal quotation marks omitted) (alteration in original), *abrogated on other grounds by Burlington N. and Sante Fe Ry. Co. v. White*, 548 U.S. 53 (2006). "If it did, 'the employer will, *ipso facto*, be vicariously liable.'" *Id.* (quoting *Mack v. Otis Elevator Co.*, 326 F.3d 116, 124 (2d Cir. 2003)). "A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth*, 524 U.S. at 761.

Here, Plaintiff has proffered sufficient evidence for a reasonable juror to conclude that he suffered a significant change in employment status after he initially complained about Mr. Giarraputo's discriminatory treatment. In particular, Plaintiff has presented evidence that Giarraputo denied him night work assignments, which paid higher wages (Dep. of Charles Gore, vol. I, 205-06 ("Gore Dep. I")), gave him less substantial duties (*id.* 205), continued to call him racially derogatory names (Dep. of Charles Gore, vol. II, 287-88 ("Gore Dep. II")), and ultimately removed him from the Route 231 project (*id.* 290). Although these incidents occurred after Plaintiff initially complained to the DOT, they constituted retaliatory harassment by Mr. Giarraputo, which allegedly went unchecked by Defendant, and which can form the basis for a tangible employment action. *See Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999) (finding unchecked retaliatory harassment by coworkers constituted tangible employment action), *abrogated on other grounds by White*, *supra*. Because Plaintiff has established a genuine issue of fact regarding whether he suffered a tangible employment action, Defendant cannot rely on the *Faragher/Ellerth* affirmative defense to avoid a jury trial here. Therefore, the Court adopts Magistrate Judge Francis's R&R, and concludes that summary

14

judgment is denied.

III. Plaintiff's Cross-Claim for Costs and Attorneys' Fees

Claiming that Defendant's objections to Magistrate Judge Francis's R&R were frivolous, Plaintiff seeks attorneys' fees and costs incurred in responding to these objections under 28 U.S.C. § 1927.  Under this provision, an attorney may be required to pay costs and fees when that attorney engages in unreasonable and vexatious conduct.  *See Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 362 (S.D.N.Y. 2006).  "It is well established that the imposition of sanctions under § 1927 requires 'a clear showing of bad faith on the part of an attorney,' and that bad faith may be inferred 'only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'" *Salovaara v. Eckert*, 222 F.3d 19, 35 (2d Cir. 2000) (quoting *Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996)).

Plaintiff argues that he has met his burden here because he has established that Defendant's objections "rely on misapplication and/or misunderstanding of the law, as well as selective citation to a portion of the relevant facts."  (Pl.'s Reply to Def.'s Objections to the Magistrate's R&R 14 ("Pl.'s Reply").)  Indeed, Defendant did not have the better of the argument here, but the Court cannot say that there has been a clear showing of bad faith on the part of Defendant's counsel.  In fact, at least some of Defendant's positions arguably found some support in the caselaw.  The Court is not prepared to say that bad arguments themselves justify Section 1927 awards, as such would trigger an avalanche of fees awarded in other cases.  *Cf. Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 340 (2d Cir. 1999) (reversing award of section 1927 fees when attorney's conduct was nothing more than "the result of poor legal

judgment"). However, the Court will deny the application without prejudice for Plaintiff to renew it at a later date if circumstances warrant such an application. Vexatiousness is not conduct that necessarily can be captured in a snap-shot, but instead may in some circumstances be discovered only over the life of a case. Because this case lives beyond today, Plaintiff is not barred from making a similar claim at a later date.

IV. Conclusion

For the reasons stated above, Defendant's Motion to File Out-of-Time Written Objections is GRANTED. Defendant's Motion for Summary Judgment is DENIED in its entirety. Plaintiff's cross-claim for costs and attorneys' fees pursuant to 28 U.S.C. § 1927 is DENIED without prejudice. The Clerk of Court is respectfully directed to terminate the pending motions (Dkt. Nos. 19, 37).

SO ORDERED.

Dated:        March 3l , 2008
              White Plains, New York

                                         _____
                                         KENNETH M. KARAS
                                         UNITED STATES DISTRICT JUDGE

16

Service List:

David M. Fish, Esq.
500 Fifth Avenue, Suite 5100
New York, NY 10110
fish@davidmfish.com
*Counsel for Plaintiff*

David M. Walsh, Esq.
Simmons Jannace & Stagg
90 Merrick Ave., 102
E. Meadow, NY 11554
*Counsel for Defendant*

John M. Nolan, II, Esq.
David Matthew Walsh, Esq.
Jackson Lewis LLP
220 Headquarters Plaza, East Tower, 7th Floor
Morristown, NJ 07960
nolanj@jacksonlewis.com
walshd@jacksonlewis.com
*Counsel for Defendant*

Joseph B. Florenzo, Esq.
Sokol, Behot & Fiorenzo
433 Hackensack Avenue
Hackensack, NJ 07601
*Counsel for Defendant*